UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

J.C.G.,

                Petitioner,

        -against-

KENNETH GENALO, New York Field Office
Director for U.S. Immigration and Customs
Enforcement; PAUL ARTETA, Director of the
Orange County Correctional Facility; SHEILA
MCNULTY, Chief Immigration Judge, Executive
Office of Immigration Review; MARY CHENG,
Acting Director, Executive Office of Immigration
Review; MERRICK B. GARLAND, Attorney
General of the United States; ALEJANDRO
MAYORKAS, Secretary of Homeland Security; and
PATRICK J. LECHLEITNER, Acting Director, U.S.
Immigration and Customs Enforcement,

                Respondents.

Case No. 1:24-cv-08755 (JLR)

**<u>OPINION AND ORDER</u>**

---

JENNIFER L. ROCHON, United States District Judge:

Petitioner J.C.G.[1] ("Petitioner") bring this petition for a writ of habeas corpus seeking

release, or, in the alternative, a second bond hearing at which the Government "bears the

burden to justify his detention by clear and convincing evidence" and where the Immigration

Judge ("IJ") "analyzes the potential mitigative impact of alternatives to detention." Dkt. 1

("Pet.") ¶ 4. Petitioner is a noncitizen[2] currently in the custody of Immigration and Customs

Enforcement ("ICE") pursuant to 8 U.S.C. § 1226(a). *See* Pet. ¶¶ 26-27. As of the date of this

---

[1] On November 20, 2024, the Court granted Petitioner's unopposed motion for leave to
proceed in this case using his initials and to refer to Petitioner's partner by her first name,
"Amy." Dkt. 6.

[2] The Court uses the term "noncitizen" instead of the statutory term "alien" to refer to those
individuals who are neither citizens nor nationals of the United States. *See Barton v. Barr*,
140 S. Ct. 1442, 1446 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

Opinion, Petitioner has been detained without bond for nine months at the Orange County

Correctional Facility in Goshen, New York.  Pet. ¶¶ 2, 5, 108.

For the reasons set forth below, the Court GRANTS J.C.G.'s Petition.

## BACKGROUND

### I.    Factual Background

J.C.G. is a male Ecuadorian citizen born in 1988.  Dkt. 3-1 ("J.C.G. Decl.") ¶ 2; Pet.

¶ 15.  He was born in Guayaquil, Ecuador, where he met his partner Amy, with whom he has

three children.  J.C.G. Decl. ¶¶ 2-3.  Starting in 2020, the Tiguerones gang — a large gang in

Ecuador — began committing robberies in J.C.G's neighborhood in Progresista, Guayaquil.

J.C.G. Decl. ¶¶ 2, 4-6.  In or about 2021, the Tiguerones gang began demanding that business

owners such as J.C.G. make weekly payments to the gang and threatened violence if

neighborhood members failed to cooperate.  J.C.G. Decl. ¶¶ 7-10.  J.C.G. joined a

neighborhood committee that organized to resist the Tirguerones gang's extortion and threats.

J.C.G. Decl. ¶¶ 12-14.  One night in December 2021 or 2022, the gang targeted members of

the neighborhood committee in a drive-by shooting.  J.C.G. Decl. ¶ 16.  J.C.G. sustained a

bullet wound to his leg.  J.C.G. Decl. ¶ 17.  The gang escalated their violence over the years,

including by setting off bombs in the neighborhood, and they eventually killed four of the six

members of the neighborhood committee.  J.C.G. Decl. ¶¶ 25-26.  The gang started

"threatening [J.C.G] directly," J.C.G. Decl. ¶ 30, including by circulating a flyer with J.C.G.'s

name on it and shooting at J.C.G.'s house.  J.C.G. Decl. ¶¶ 30-31.  In July 2023, members of

the Tiguerones gang shot at J.C.G. and his friends as they were gathered on a sidewalk, killing

J.C.G.'s neighbor.  J.C.G. Decl. ¶ 33.

Fearing for their safety, J.C.G. and his family subsequently fled Ecuador for the

United States in September 2023.  J.C.G. Decl. ¶ 37.  J.C.G. and his family were apprehended

by U.S. Customs and Border Protection ("CBP") near Brownsville, Texas, in November 2023. Dkt. 3 ("Koenig Decl.") ¶ 3.  J.C.G. was charged as removable under Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i), as a noncitizen present in the United States without being admitted or paroled.  Dkt. 14-1 at 1.  "The family was released on their own recognizance and enrolled in an Alternatives to Detention ('ATD') program, which required periodic reports to an ICE Enforcement and Removal Operations ('ERO') field office."  Koenig Decl. ¶ 3.

On January 8, 2024, while staying in a shelter for newly arrived immigrants, Amy and J.C.G. had "a discussion about cleaning up after the kids."  Dkt. 3-2 ("Amy Decl.") ¶ 13; Dkt. 3-4 ("Bond Hrg. I Tr.") at 14:12.  A social worker at the shelter intervened, and although Amy assured the social worker that J.C.G. "had not hit [her]" and that "nothing had happened," the social worker elected to call the police.  Amy Decl. ¶¶ 13-14; *see* Bond Hrg. I Tr. at 12:17-13:2, 13:10-20.  The officers who arrived on the scene did not speak Spanish; therefore, Amy — who does not speak English — could only communicate with the officers through the social worker.  Amy Decl. ¶ 14; Bond Hrg. I Tr. at 13:24-14:5.  Amy suspects that the social worker did not interpret everything properly because "she was speaking with [the officers] in English without telling [Amy] what was going on."  Amy Decl. ¶ 14; Bond Hrg. I Tr. at 14:7-16.

J.C.G. was arrested and charged with misdemeanor assault and related misdemeanor charges.  Dkt. 3-3 at 3.  This was J.C.G.'s first and only criminal arrest.  Pet. ¶ 51; Koenig Decl. ¶ 6.  A temporary order of protection was also issued against J.C.G.  Amy Decl. ¶ 19; Koenig Decl. ¶ 7.  The underlying charges were subsequently dismissed and sealed, and the temporary order of protection was vacated.  Dkt. 3-3 at 3; Amy Decl. ¶ 19.  However, just days before the dismissal of the case, Amy and J.C.G. reported to the ICE ERO field office for

a routine check-in on April 12, 2024, and ICE arrested J.C.G. on the ground that he posed a danger to the community.  Amy Decl. ¶ 19; Koenig Decl. ¶ 3; Pet. ¶ 26.

J.C.G. has since been detained at Orange County Jail in Goshen, New York.  Koenig Decl. ¶ 4.  Since his detention, Amy has been solely responsible for the caregiving of their three children and the family's finances, and because Amy cannot leave the children alone in the shelter, she is unable to work.  Amy Decl. ¶ 20.  Amy and the children were forced to relocate to a different shelter, and the children's physical health and emotional well-being has declined since their father's detention.  Amy Decl. ¶¶ 19, 21-25.

## II.    J.C.G.'s Removal Proceedings

On June 4, 2024, J.C.G. filed an application for asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  Koenig Decl. ¶¶ 5, 32; *see* Dkt. 3-1.  The individual merits hearing on J.C.G.'s application took place on July 15, 2024.  Koenig Decl. ¶ 22; Dkt. 14-3 at 3.  At the conclusion of the hearing, the IJ stated that he was denying J.C.G.'s application for relief.  Koenig Decl. ¶ 22.  In a written decision issued on August 27, 2024, the IJ deemed J.C.G. "overall credible," Dkt. 14-3 at 4, and found that he had "sufficiently corroborated his claim with documentary evidence and expert testimony," Dkt. 14-3 at 5.  However, the IJ held that while J.C.G. had "suffered harm that would rise to the level necessary for a finding of past persecution," he "failed . . . to demonstrate that the harm he suffered was on account of a protected ground," as necessary to qualify for withholding of removal.  Dkt. 14-3 at 7.  The IJ also denied relief under the CAT.  Dkt. 14-3 at 13.  J.C.G. "filed a timely notice of appeal of the merits decision" with the Board of Immigration Appeals ("BIA" or the "Board") on September 27, 2024.  Koenig Decl. ¶ 27.  Following a request from J.C.G. for an extension of the deadline for his briefs on his merits

appeal, the BIA set a briefing deadline of December 26, 2024.  Dkt. 15 ("Pardo-Figueroa Decl.") ¶ 29.

In the meantime, on June 12, 2024, J.C.G. received an initial bond hearing before the IJ.  Koenig Decl. ¶ 9.  The only witness questioned at the hearing was Amy, who testified that J.C.G. had never hit her or physically hurt their children.  Koenig Decl. ¶ 9; Bond Hrg. I Tr. at 13:10-20.  At the end of the bond hearing, the IJ requested that J.C.G.'s counsel file additional documentation from the dismissed criminal case, including the arrest report, and therefore reset the bond hearing for June 26, 2024.  Koenig Decl. ¶ 10.  In advance of the June 26 hearing, J.C.G.'s counsel submitted, among other things, the arrest report, record of court action, and misdemeanor complaint for the dismissed criminal case, as well as an affidavit from a supervising attorney at Queens Defenders explaining that an arrest and prosecution resulting in dismissal under New York Criminal Procedure Law Section 30.30 are "treated as a nullity" under New York law.  Koenig Decl. ¶ 11.  The underlying police report includes the following description:

> Deponent states that he is informed by the Complainant, Amy [], that at the above-mentioned dat [*sic*], time, and place of occurrence, the Defendant, [J.C.G], who is her boyfriend, slapped and punched her face, causing bruising to her lip and swelling to her cheek, substantial pain, as well as annoyance and alarm.

Koenig Decl. ¶ 13 (capitalization omitted).  The arrest report also states that J.C.G. and Amy's children were present during the dispute.  Koenig Decl. ¶ 14.

At the June 26 hearing, Amy refuted the description of the underlying events in the arrest report and reiterated that J.C.G. never hit her.  Dkt. 3-5 ("Bond Hrg. II Tr.") at 36:5-16, 41:5-7.  On July 12, relying in large part on the underlying arrest report, the IJ issued a written decision denying J.C.G. bond on the grounds that J.C.G had "failed to establish that he would not pose a danger to the community."  Dkt. 3-3 at 3.  In so holding, the IJ required J.C.G. to

"establish to the satisfaction of the IJ that he . . . [did] not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight." Dkt. 3-3 at 2 (quoting *In Re Guerra*, 24 I. & N. Dec. 37, 39 (B.I.A. 2006)). The written decision underscored that "it is [J.C.G.'s] burden to demonstrate that he is not a danger to the community," and that J.C.G. had "not submitted any statement or testified regarding any details of his arrest." Dkt. 3-3 at 6. The IJ did not address whether J.C.G. posed a flight risk. Dkt. 3-3 at 7.

On August 8, 2024, J.C.G.'s counsel noticed an appeal of the bond denial, and briefing on the bond appeal was completed on October 9, 2024. Koenig Decl. ¶ 18. As of the time of the parties' briefing in this matter, the Board had not yet rendered a decision on the bond appeal. Pardo-Figueroa Decl. ¶ 23.

On November 18, 2024, J.C.G. filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2441. *See* Pet. J.C.G. challenges his continued detention and asks for a writ directing his immediate release, or, in the alternative, providing him with a new bond hearing in immigration court where (i) the Government "bear[s] the burden of establishing by clear and convincing evidence that continued detention is justified"; (ii) the immigration judge considers alternatives to detention; and (iii) the immigration judge considers Plaintiff's ability to pay in setting any bond. Pet. at 32-33. On December 11, 2024, the Government filed its response, Dkt. 16 ("Opp."), and on December 19, 2024, J.C.G. filed his reply, Dkt. 17 ("Reply").

## LEGAL STANDARD

J.C.G. is in custody pursuant to 8 U.S.C. § 1226, which authorizes the Government to "arrest[] and detain[]" a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a). Under 28 U.S.C. § 2241, district

courts have the authority to grant a writ of habeas corpus to any petitioner "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). The jurisdiction conferred on federal courts by Section 2441 includes the authority to review noncitizen's claims challenging the constitutionality of their detention during the pendency of removal proceedings. *See Demore v. Kim*, 538 U.S. 510, 517 (2003); s*ee also Reid v. Decker*, No. 19-cv-08393 (KPF), 2020 WL 996604, at *5 (S.D.N.Y. Mar. 2, 2020) ("Under [28 U.S.C.§ 2241], federal courts are empowered to hear claims by non-citizens challenging the constitutionality of their detention." (citing *Demore*, 538 U.S. at 516-17)). Section 1226(e) provides that "[n]o court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any [noncitizen] or the . . . denial of bond or parole." 8 U.S.C. § 1226(e). However, "[t]he Supreme Court has made clear that § 1226(e) does not preclude challenges 'to the extent of the Government's detention authority under the statutory framework as a whole,'" "[n]or does it 'limit habeas jurisdiction over constitutional claims or questions of law.'" *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020) (first quoting *Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018); and then quoting *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011)). Here, where Petitioner "does not challenge the IJ's weighing of the evidence presented at his bond hearing or the IJ's discretionary decision to deny bond[,] but rather asserts that the procedures for that bond hearing were constitutionally and statutorily infirm," Section 1226(e) "does not strip the Court of jurisdiction." *Torres v. Decker*, No. 18-cv-10026 (VEC), 2018 WL 6649609, at *1 (S.D.N.Y. Dec. 19, 2018); *Cepeda v. Shanahan*, No. 15-cv-09446 (AT), 2016 WL 3144394, at *2 (S.D.N.Y. Apr. 22, 2016) (noting that "[t]o the extent [petitioner] complains that his board hearing was constitutionally deficient . . . he can seek redress from this Court").

## DISCUSSION

J.C.G.'s Petition asserts two claims for relief: first, that his continued detention is unlawful because, in violation of his due process rights under the Fifth Amendment, J.C.G. bore the burden of establishing by clear and convincing evidence that he was not a danger to the community or a flight risk at his bond hearing, Pet. ¶¶ 108-110; and second, that the Board's decision in *Matter of Adeniji*, 22 I. & N. Dec. 1102 (B.I.A. 1999) — adopting the challenged burden allocation — "constituted an unreasonable departure from prior agency precedents" and its application to J.C.G.'s case was therefore arbitrary and capricious in violation of the Administrative Procedure Act ("APA"). Pet. ¶¶ 111-112. As will be explained further below, the Court resolves J.C.G.'s Petition based on his constitutional challenge and therefore need not address his statutory argument.

### I.    Exhaustion

As an initial matter, the Government urges that the Court need not reach the merits because J.C.G. has not yet exhausted his administrative remedies. Opp. at 10-14. Therefore, the Government asserts that the Court should dismiss J.C.G.'s Petition, or, at a minimum, hold the Petition in abeyance pending a final resolution on the bond appeal by the Board. Opp. at 10. The Court declines to do so and instead exercises its discretion to excuse J.C.G.'s failure to exhaust.

"Under the doctrine of exhaustion of administrative remedies, 'a party may not seek federal judicial review of an adverse administration determination until the party has first sought all possible relief within the agency itself.'" *Howell v. INS*, 72 F.3d 288, 291 (2d Cir. 1995) (quoting *Guitard v. U.S. Sec'y of Navy*, 967 F.2d 737, 740 (2d Cir. 1992)). As the Government acknowledges, "[t]here is no statutory requirement that a habeas petitioner exhaust his administrative remedies before challenging his immigration detention" in federal

court.  Opp. at 10 (alteration in original) (quoting *Araujo-Cortes v. Shanahan*, 35 F. Supp. 3d
533, 538 (S.D.N.Y. 2014)); *accord Arana v. Decker*, No. 20-cv-04104 (LTS), 2020 WL
3833459, at *2 (S.D.N.Y. July 8, 2020).  "However, courts may require exhaustion as a
prudential matter in the case of challenges to immigration bond decisions . . . ."  *Arana*, 2020
WL 3833459, at *2.  "Prudential exhaustion is intended to 'protect[] the authority of
administrative agencies, limit[] interference in agency affairs, [permit the agencies to]
develop[] the factual record to make judicial review more efficient, and [to] resolv[e] issues to
render judicial review unnecessary.'"  *Garcia v. Decker*, 448 F. Supp. 3d 297, 305 (S.D.N.Y.
2020) (alterations in original) (quoting *Beharry v. Aschroft*, 329 F.3d 51, 62 (2d Cir. 2003)).

There are, however, "established exceptions to the exhaustion rule": when "(1)
available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury
may occur without immediate judicial relief; (3) administrative appeal would be futile; and
(4) in certain instances a plaintiff has raised a substantial constitutional question.'"  *Howell*,
72 F.3d at 291; *see also O.F.C. v. Decker*, No. 22-cv-02255 (JPC), 2022 WL 4448728, at *3
(S.D.N.Y. Sept. 12, 2022) ("[W]hen courts exercise their own discretion in requiring parties to
exhaust administrative remedies, courts may likewise exercise that discretion by excusing a
failure to exhaust." (citing *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992))); *Beharry,* 329
F.3d at 62 (same).  "With regard to futility, pursuing administrative remedies may be futile
where 'the administrative procedures do not provide an adequate remedy,' or where 'the
agency has predetermined the issue before it.'"  *Raspoutny v. Decker*, 708 F. Supp. 3d 371,
381 (S.D.N.Y. 2023) (first quoting *Cave v. E. Meadow Union Free Sch. Dist*., 514 F.3d 240,
249 (2d Cir. 2008); and then quoting *Monestime v. Reilly*, 704 F. Supp. 2d 453, 456 (S.D.N.Y.
2010)).  But "these factors cannot be applied mechanically," *Abbey v. Sullivan*, 978 F.2d 37,
44 (2d Cir. 1992); "[r]ather, their application 'must be guided by the policies underlying the

exhaustion requirement.'" *Id.* (quoting *Bowen v. City of New York*, 476 U.S. 467, 484 (1986)). "Whether Petitioner's acknowledged failure to exhaust should be excused, then, depends on whether requiring exhaustion in these circumstances would advance the purpose of the exhaustion requirement." *O.F.C.*, 2022 WL 4448728, at *4 (citing *Abbey*, 978 F.2d at 45); *see Abbey*, 978 F.2d at 45 ("[S]aying that exhaustion would be futile is merely another way of stating that the policies underlying the exhaustion requirement do not apply in a given case.").

Petitioner contends that forcing him to exhaust the administrative process prior to seeking judicial review of his constitutional and statutory claims would be futile. *See* Reply at 7-11. The Court agrees. The Board lacks jurisdiction to reach Petitioner's constitutional claims. *See Matter of C-*, 20 I. & N. Dec. 529, 532 (B.I.A. 1992) ("[I]t is settled that the immigration judge and this Board lack jurisdiction to rule upon the constitutionality of the [INA] and the regulations."); *see also United States v. Gonzalez-Roque*, 301 F.3d 39, 47 (2d Cir. 2002) ("[C]onstitutional claims lie outside the BIA's jurisdiction . . . ."); *Quintanilla v. Decker*, No. 21-cv-00417 (GBD), 2021 WL 707062, at *2 (S.D.N.Y. Feb. 22, 2021) ("[T]he BIA has no authority to address Petitioner's constitutional challenge . . . ."). And, as the Government argues, Board precedent forecloses Petitioner's statutory arguments before the Board. *See* Opp. at 24 (outlining BIA's position that 8 C.F.R. § 236.1(c)(8), which places the burden of proof on noncitizens, was "intended to be part of permanent regulations and would apply to immigration judges"); *see also Raspoutny,* 708 F. Supp. 3d at 382 ("[T]he remedy [petitioner] seeks — a new bond hearing with the burden shifted to the Government — is 'foreclosed at the BIA based on existing administrative precedent.'" (quoting *Joseph v. Decker*, No. 18-cv-02640 (RA), 2018 WL 6075067, at *6 (S.D.N.Y. Nov. 21, 2018))). For these reasons, courts in this District routinely excuse noncitizens' failure to exhaust

administrative remedies when noncitizens challenge the burden allocation at a Section 1226(a) bond hearing. *See, e.g.*, *Brevil v. Jones*, No. 17-cv-01529 (LTS), 2018 WL 5993731, at *3 (S.D.N.Y. Nov. 14, 2018) (finding that appeal to the Board would "have been futile because [petitioner] challenges the constitutionality of the burden of proof" applied at his bond hearing, "and the BIA has already determined" that the burden is on the noncitizen); *O.F.C.*, 2022 WL 4448728, at *5 (statutory argument would have been futile to raise before the Board given the "BIA's consistent and lengthy record of allocating the burden of proof to detained immigrants"); *Gonzalez Evangelista v. Decker*, No. 20-cv-08758 (AKH), 2021 WL 101201, at *2-3 (S.D.N.Y. Jan. 12, 2021) (excusing failure to exhaust burden-shifting argument on futility grounds); *P.M. v. Joyce*, No. 22-cv-06321 (VEC), 2023 WL 2401458, at *1 n.2 (S.D.N.Y. Mar. 8, 2023) (finding that any appeal to the BIA "would have been futile" when "[t]he BIA has repeatedly affirmed its position that detainees bear the burden of proof during a bond hearing pursuant to section 1226(a)"); *Rodriguez v. Decker*, No. 20-cv-04118 (PKC), 2020 WL 3618990, at *1 (S.D.N.Y. June 30, 2020) (same). The Court is persuaded by and agrees with the reasoning of these courts.

The Government nonetheless insists that exhaustion of administrative remedies is not "futile" here because the Board could reverse the IJ based on a ground other than the burden shifting argument, thereby "avoid[ing]" Petitioner's constitutional claims. Opp. at 13. As Petitioner concedes, it is possible that the Board could reverse the IJ's dangerousness determination, Reply at 8-9, and doing so would render J.C.G.'s constitutional arguments moot. The Court, however, is not persuaded by this argument. "[A]ny arguments [petitioner] could raise on the merits in a BIA appeal are intertwined with arguments he advances in this court," because J.C.G.'s arguments before the Board "will be significantly influenced by how the burden of proof is allocated." *O.F.C.*, 2022 WL 4448728, at *7. It strikes this Court as

inefficient — and therefore contrary to the objectives of prudential exhaustion, *see, e.g.*, *McCarthy*, 503 U.S. at 145 — to require J.C.G. to exhaust his appeal on the merits, when "the proper allocation of the burden of proof may dramatically influence the result of an adjudication on the merits of Petitioner's request for bond." *O.F.C.*, 2022 WL 4448728, at *7; *see also Gonzalez Evangelista*, 2021 WL 101201, at *3 (explaining that "[b]ecause of this placement of burden [on the noncitizen seeking release], Petitioner would not have been able to meaningfully challenge the IJ's weighing of the evidence" before the Board).  In other words, because J.C.G. is subject to a demanding and constitutionally suspect standard, he is unlikely to prevail on a challenge as to the application of that standard.  Moreover, the Government does not account for the likelihood that, even if the Board reverses the IJ's dangerousness finding, the Board will remand the matter to immigration court for a determination as to flight risk.  Wilkinson Decl. ¶ 8; *see, e.g.*, *In re Milla*, 2010 WL 4972456, at *1 (B.I.A. Nov. 23, 2010) (reversing IJ's dangerousness finding and remanding for further proceedings on flight risk under same standard).  Petitioner would then be subject to the same constitutional standard on remand that he challenges herein as unconstitutional.  Under these circumstances, it cannot be fairly stated that there is a "genuine opportunity" for adequate relief before the Board.[3]  *Howell*, 72 F.3d at 291.

---

[3] The Court is aware that some courts have rejected this argument, holding that the "immigration authorities may decide to grant the petitioner's request for a bond" without requiring remand, or that the petitioner might nevertheless "succeed in persuading the IJ . . . that he is not a risk of flight and thus obtain the bond he seeks" on remand.  *Roman v. Decker*, No. 20-cv-03752 (JGK), 2020 WL 4273823, at *7 (S.D.N.Y. July 24, 2020); *see also Monterosa v. Decker*, No. 20-cv-02653 (MKV), 2020 WL 1847771, at *5 (S.D.N.Y. Apr. 11, 2020) (finding that the Board's potential remand to the IJ for a determination on flight risk could still result in release on bond and therefore holding that exceptions to exhaustion did not apply); *Arana*, 2020 WL 3833459, at *3 (same).  The Court respectfully disagrees with the reasoning of these courts.  In deciding whether to grant bond or conditional parole, an immigration judge is required to evaluate whether a noncitizen is a threat to public safety, a threat to natural security, or is likely to abscond; when the IJ reserves on the question of flight

The Government's cited authorities do not require a contrary holding.  The vast majority of the authorities cited by the Government do not involve Section 1226(a) burden-shifting claims.  Indeed, just four of the cases cited by the Government involve dismissals of burden-shifting claims for failure to exhaust, and all four predate the Second Circuit's decision in *Velasco Lopez* affirming the grant of habeas relief to a petitioner who raised constitutionality concerns with the burden allocation at his bond hearing.  In *Torres* and *Monterosa*, the courts recognized the possibility of the Board changing its position as to burden allocation at an initial bond hearing.  *Torres*, 2018 WL 6649609, at *2; *Monterosa v. Decker*, No. 20-cv-02653 (MKV), 2020 WL 1847771, at *4-7 (S.D.N.Y. Apr. 11, 2020).  *Monterosa* explicitly acknowledged the Second Circuit's forthcoming decision in *Velasco Lopez*, noting that "a ruling in the near term from the Second Circuit" might cause the Board to alter its burden-of-proof analysis.  2020 WL 1847771, at *4.  But the Board's decisions in the wake of *Velasco Lopez* make clear that a change in the Board's views on burden shifting has not in fact materialized.  To the contrary, post–*Velasco Lopez*, there has been "no indication that the BIA has expressed a willingness to alter its policy of placing the burden of proof on noncitizens to demonstrate that they are not a danger to the community or a risk of flight in order to merit release on bond."  *Quintanilla*, 2021 WL 707062, at *2; *see also O.F.C.*, 2022 WL 4448728, at *5 ("[I]t is hard to imagine a less ambiguous example of an

---

risk, the Board is likely to remand for a determination by the IJ on the issue in the first instance.  It would be futile to require Petitioner to exhaust his administrative remedies when, on remand, "respondents will once again inflict on [petitioner] the exact constitutional injury that he complains of in this petition" — that is, require him to prove that he will not abscond by clear and convincing evidence.  Tr. of Oral Arg. and Bench. Dec., at 8, *Padilla Raudales v. Decker*, No. 19-cv-01934 (PGG) (S.D.N.Y. Aug. 8, 2019), ECF No. 24; *see also* Tr. of Bench Dec. at 8 , *G.L. v. Joyce*, No. 22-cv-06274 (KPF) (S.D.N.Y. Oct. 14, 2022), ECF No. 28 (excusing exhaustion where, even if the Board overturned the IJ's finding, "the case would likely be remanded for a finding of flight risk that was subject to what this court considers to be an unconstitutional standard").

agency's having already made up its mind than the BIA's consistent and lengthy record of allocating the burden of proof to detained immigrants.").

As for *Arana* and *Roman*, the courts therein expressed a reluctance to address unsettled constitutional issues when the case could be resolved on a "narrower factual basis." *Roman v. Decker*, No. 20-cv-03752 (JGK), 2020 WL 4273823, at *7 (S.D.N.Y. July 24, 2020); *see Arana*, 2020 WL 3833459, at *3. A "court need not be worried about entering unchartered constitutional waters," however, "when it merely engages in the straightforward task of applying recent precedent" — here, *Velasco Lopez* — to analogous circumstances. *O.F.C.*, 2022 WL 4448728, at *7. As set forth in greater detail below, *Velasco Lopez* directs the outcome in this case. It is significant that the Government points to no cases requiring exhaustion of burden-shifting claims after *Velasco Lopez*; *Velasco Lopez* provides federal courts clear authority to apply in resolving burden-shifting claims, and therefore necessarily alters the exhaustion analysis, which is premised, at least in part, on efficiency considerations.

The remainder of the cases cited by the Government — all pre–*Velasco Lopez* — involve either challenging the immigration judge's application of a legal standard — as opposed to the constitutionality of the legal standard itself — or requests for relief redressable by the Board. Those authorities are therefore inapposite. *See, e.g.*, *Dembele v. Decker*, No. 18-cv-05070 (JPO), 2018 WL 4960234, at *3 (S.D.N.Y. 2018) (requiring exhaustion where petitioner raised, among other claims, a procedural due process challenge that could be addressed by Board); *Gaitan v. Decker*, No. 17-cv-05690 (WHP), 2018 WL 740996, at *3 (S.D.N.Y. Feb. 7, 2018) (requiring exhaustion of procedural defects that "may be resolved at the administrative level"); *Garcia v. Decker*, No. 18-cv-03840 (AT), 2018 WL 2849743, at *1 (S.D.N.Y. June 7, 2018) (requiring exhaustion where petitioner's requested bail reduction could be granted by the Board); *Paz Nativi v. Shanahan*, No. 16-cv-08496

(JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) (requiring exhaustion where petitioner claimed immigration judge failed to consider petitioner's ability to pay); *Perdomo v. Decker*, No. 17-cv-03268 (AKH), 2017 WL 4280684, at *1 (S.D.N.Y. July 31, 2017) (requiring exhaustion where petitioner did not challenge the governing legal standard but rather the IJ's application of that standard); *Bogle v. Dubois*, 236 F. Supp. 3d 820, 822-23 (S.D.N.Y. 2017) (same); *Cepeda*, 2016 WL 3144394, at *2 (same); *Palaniandi v. Jones*, No. 15-cv-04021 (RA), 2016 WL 1459607, at *2 (S.D.N.Y. Mar. 10, 2016) (same); *Herrera v. Mechkowski*, No. 15-cv-07058 (GBD), 2016 WL 595999, at *1 (S.D.N.Y. Feb. 11, 2016) (same).

For the reasons set forth above, the Court finds that requiring J.C.G. to exhaust the administrative appeals process before filing his habeas petition would be futile. The Court therefore need not address Petitioner's separate argument that Petitioner and his family would suffer irreparable harm if exhaustion were required. The Court next turns to the merits of the petition.

## II.    Due Process

J.C.G. asserts two bases for a new hearing at which the Government should bear the burden of justifying his continued detention. First, J.C.G. argues that the allocation of the burden of proof at his original bond hearing violated constitutional due process protections. Pet. at 19-24. In the alternative, J.C.G. argues that even if the allocation of the burden at his original bond hearing was adequate, his prolonged detention — at the time of this opinion, exceeding nine months — warrants heightened procedural protections. Pet. at 24-27. The Court finds that the allocation of the burden of proof at J.C.G.'s initial bond hearing violated J.C.G.'s Fifth Amendment Due Process rights, and that J.C.G. is in any event entitled to a new hearing based on his prolonged detention.

### A.  Legal Standard

The Fifth Amendment's Due Process Clause provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  "Freedom from imprisonment —from government custody, detention, or other forms of physical restraint — lies at the heart of the liberty that Clause protects."  *Banegas v. Decker*, No. 21-cv-02359 (VEC), 2021 WL 1852000, at *2 (S.D.N.Y. May 7, 2021) (quoting *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)).  The Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection."  *Addington v. Texas*, 441 U.S. 418, 425 (1979); *see also Charles v. Orange County*, 925 F.3d 73, 78 n.3 (2d Cir. 2019) ("[C]ivil immigration detainees are housed in conditions similar to those experienced by detainees awaiting trial on criminal charges.").  It is well established that these protections extend to noncitizens, regardless of "whether their presence here is lawful, unlawful, temporary, or permanent." *Velasco Lopez*, 978 F.3d at 850 (citing *Zadvydas*, 553 U.S. at 693); *see also Demore*, 538 U.S. at 523 ("[T]he Fifth Amendment entitles [noncitizens] to due process of law in deportation proceedings.").  "[H]abeas review based on due process contentions is 'not limited to evaluating the lawfulness of detention when it is first imposed,' but may extend to 'the legality of [noncitizens'] ongoing detention.'"  *Jimenez v. Decker*, No. 21-cv-00880 (VSB), 2021 WL 826752, at *6 (S.D.N.Y. Mar. 3, 2021) (second alteration in original) (quoting *Velasco Lopez*, 978 F.3d at 850).

### B.  Application

Numerous courts in this District have held that "where, as here, the Government seeks to detain a noncitizen pending removal pursuant to § 1226(a), the Fifth Amendment Due Process Clause requires the Government to bear the burden of proving, by clear and

16

convincing evidence, that such detention is justified." *Banegas*, 2021 WL 1852000, at *2 (collecting cases); *see also Quintanilla*, 2021 WL 707062, at *3 ("[T]his Court joins the 'overwhelming consensus of judges in this District' in concluding that the Government should bear the burden to deny liberty at any Section 1226(a) bond hearing, regardless of the noncitizen's length of detention." (quoting *Fernandez Aguirre v. Barr*, No. 19-cv-07048 (VEC), 2019 WL 3889800, at *3 (S.D.N.Y. Aug. 19, 2019))); *Rodriguez*, 2020 WL 3618990, at *2 ("Joining in the consensus forming among judges of this District, the Court finds that Due Process requires that the government bear the burden of proof on dangerousness during a bond hearing for an individual detained under section 1226(a)."); *Velasco Lopez v. Decker*, No. 19-cv-02912 (ALC), 2019 WL 2655806, at *3 (S.D.N.Y. May 15, 2019) ("Every court to have considered the constitutional issue . . . has agreed [that] . . . under the Due Process Clause of the Fifth Amendment, it is the Government's burden to justify the detention of an immigrant at a bond hearing under § 1226(a)."), *aff'd*, 978 F.3d 842 (2d Cir. 2020); *Darko v. Sessions*, 342 F. Supp. 3d 429, 435 (S.D.N.Y. 2018) ("There has emerged a consensus view that where, as here, the government seeks to detain an alien pending removal proceedings, it bears the burden of proving that such detention is justified.").  The Court is persuaded by the courts' analyses given the well-settled expectation that the Government bears a "heightened burden of proof . . . in civil proceedings in which the 'individual interests at stake . . . are both "particularly important" and "more substantial than mere loss of money."'" *Cooper v. Oklahoma*, 517 U.S. 348, 363 (1996) (second omission in original) (quoting *Santosky v. Kramer*, 455 U.S. 745, 756 (1982)).

In finding that the Government should bear the burden here of proving by clear and convincing evidence that detention under Section 1226(a) is warranted, the Court is guided by the Second Circuit's application of *Mathews v. Eldrige*'s three-factor balancing test in *Velasco*

*Lopez*.  In deciding whether Velasco Lopez's 15-month detention under Section 1226(a) warranted heightened procedural protections, the Second Circuit considered the three factors set forth in *Mathews*:

> (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail."

*Velasco Lopez*, 978 F.3d at 851 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).
Turning first to the private interest at issue, the Second Circuit underscored that detention implicates "the most significant interest there is — the interest in being free from imprisonment."  *Id.* (citing *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)).  Here, as in *Velasco Lopez*, "[t]he deprivation that [J.C.G.] experienced was not the result of a criminal adjudication," *id.*, and yet he has spent nine months in a correctional facility, estranged from his partner and children.  There is no question that J.C.G. suffered a substantial deprivation of liberty.

With respect to the risk of erroneous deprivation, here, as in *Velasco*, the "procedures underpinning [J.C.G.'s] lengthy incarceration markedly increased the risk of error."  *Id.* at 852.  The Second Circuit observed that "the Government had substantial resources to deploy" to obtain information relevant to Velasco Lopez's bond hearing.  *Id.* at 853.  So too here, where information pertaining to J.C.G.'s underlying arrest would have been readily accessible to the Government.  *See id.* ("[The Government's] resources include computerized access to numerous databases and to information collected by DHS, DOJ and the FBI, as well as information in the hands of state and local authorities.").  Yet, because the burden rested with J.C.G., the IJ's written decision denying bond was based on the fact that J.C.G. "ha[d] not

submitted any statement or testified regarding any details of his arrest."  Dkt. 3-3 at 6.  Under

the IJ's burden allocation, noncitizens are placed in the precarious position of proving, to the

IJ's satisfaction, a negative — that they are *not* a threat to public safety or a flight risk.  As the

Second Circuit observed in *Black v. Decker*, "proving a negative (especially a lack of danger)

can often be more difficult than proving a cause for concern."  103 F.4th 133, 156 (2d Cir.

2024) (quoting *Hernandez-Lara v. Lyons*, 10 F.4th 19, 31 (1st Cir. 2021)).  As a result of this

burden allocation, "ambiguities, or lack of information, in the record result in an adverse

inference against the detainee."  *Velasco Lopez*, 978 F.3d at 847.  The legal standard applied

at Section 1226(a) bond hearings, including J.C.G.'s hearing, therefore introduces a

substantial risk of the erroneous deprivation of rights.

       The Government argues that noncitizens like J.C.G. who are detained under Section

1226(a) "receive numerous procedural safeguards" during their detention, Opp. at 15,

including "three levels of review" and a bond hearing at which they are "allowed to present

any evidence that might bear on the issues of flight risk or dangerousness," *id*. at 18.

Procedural due process, however, "requires . . . an opportunity to be heard 'at a *meaningful*

time and in a *meaningful* manner.'"  *P.M.*, 2023 WL 2401458, at *4 (quoting *Mathews*, 424

U.S. at 333).  Courts have held that the procedural safeguards presently imposed by IJs fail to

satisfy this standard.  *See id*. at *4 (rejecting argument that noncitizen's detention was

"accompanied by sufficient procedural safeguards").  For instance, in *Velasco Lopez*, the

petitioner received two bond hearings at which he bore the burden of proof; the Second

Circuit nevertheless concluded that the "procedures underpinning [petitioner's] lengthy

incarceration markedly increased the risk of error."  978 F.3d at 852.  The same is true here.

       Finally, with respect to the Government's interest, the Second Circuit in *Velasco*

*Lopez* found that "shifting the burden of proof to the Government to justify continued

detention promotes the Government's interest — one we believe to be paramount — in minimizing the enormous impact of incarceration in cases where it serves no purpose." *Id.* at 851. The Court declined to find that requiring the Government to bear the burden "undermine[d] its legitimate interests or entaile[d] an undue administrative burden." *Id.* Weighing the foregoing factors, the Second Circuit concluded that Velasco Lopez's prolonged incarceration violated due process, and "that the district court appropriately addressed the violation by ordering a new hearing at which the Government was called upon to justify continued detention." *Id.* at 855.

The Government makes much of the fact that the Second Circuit expressly declined "to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden," *Id.* at 855 n.13; Opp. at 16. According to the Government, *Velasco Lopez* "suggests that there is no constitutional infirmity in an immigration judge's placement of the burden of proof on a noncitizen detained under § 1226(a) at his initial bond hearing where the noncitizen has been afforded adequate process." Opp. at 2. This Court declines to read any such "suggestion" into *Velasco Lopez's* holding. *See, e.g.*, *B.S. v. Joyce*, No. 22-cv-09738 (PKC), 2023 WL 1962808, at *4 (S.D.N.Y. Feb. 13, 2023) (rejecting argument that *Velasco Lopez* confirms that due process does not always require the burden to be placed on the government at a Section 1226(a) bond hearing); *Banegas*, 2021 WL 1852000, at *3 ("[N]either the Circuit's decision in *Velasco Lopez* nor any other binding appellate authority overrules the 'overwhelming consensus' of courts in this District that the Due Process Clause of the Fifth Amendment requires the Government to bear the burden to justify continued detention of a noncitizen who is detained pursuant to § 1226(a) . . . ."). *Velasco Lopez* "raise[d] a due process challenge not to his initial detention but to the procedures that resulted in his prolonged incarceration without a determination that

he pose[d] a heightened bail risk."  978 F.3d at 850.  Since the lawfulness of Velasco Lopez's detention when first imposed was not challenged, the Second Circuit constrained its holding to the facts of the case and the record before it.  *See id.*  However, as Petitioner notes, the Second Circuit cited approvingly those district court cases that have endorsed a broader ruling.  *See id.* at 855 n.14 (first citing *Darko*, 342 F. Supp. 3d at 435-36; then citing *Medley v. Decker*, 18-cv-07361 (AJN), 2019 WL 7374408, at *3 (S.D.N.Y. Dec. 11, 2019); and then citing *Rajesh v. Barr*, 420 F. Supp. 3d 78, 87 (W.D.N.Y. 2019)).

Even if *Velasco Lopez* were construed as requiring a finding of "prolonged detention" prior to granting a noncitizen a burden-shifting hearing, J.C.G.'s nine-month detention qualifies as a "prolonged detention."  It is true, as the Government emphasizes, that the petitioner in *Velasco Lopez* had been detained for fifteen months.  But, as noted *supra*, the Second Circuit held that "[t]his case does not require us to establish a bright-line rule for when due process entitles an individual detained under § 1226(a) to a new bond hearing with a shifted burden."  *Velasco Lopez*, 978 F.3d at 855 n.13.  While not reaching the issue, the Second Circuit observed that the Supreme Court has held that the presumptively reasonable limit to post-removal detention is six months, *id.* (citing *Zadvydas*, 533 U.S. at 701), and advised that detention pending removal should be of a "relatively short duration," *id.* at 852 (citing *Demore*, 538 U.S. at 529); *see Demore*, 538 U.S. at 530 (noting that "in the vast majority of cases," the period of detention under Section 1226(c) is "roughly a month and a half").  Also instructive is the Second Circuit's decision in *Black v. Decker*, which addressed the necessary procedural protections for noncitizens in mandatory detention pursuant to Section 1226(c), a separate section that deals with detention of noncitizens who have been

convicted of crimes. 103 F.4th at 143.[4] Applying *Mathews*, the Second Circuit held that Mr. Black's seven-month-long detention warranted heightened procedural protections, including a bond hearing at which the Government shouldered the burden of proof. *Id.* at 151. In so holding, the Second Circuit emphasized that Mr. Black was detained "far longer" than the month-and-a-half period contemplated in *Demore*. *Id.*

Likewise, Petitioner's nine-month detention exceeds the presumptively reasonable detention period, and far exceeds the average length of detention contemplated in *Demore*. Moreover, Petitioner's detention could continue for several months (and potentially years) longer. Petitioner's counsel represents that, on average, the Board takes between two and five months after briefing on the merits is completed to issue a decision. Koenig Decl. ¶ 29. If the Board grants J.C.G.'s appeal, it will likely remand to the immigration court for further proceedings, which could last months; if the Board denies J.C.G.'s appeal, J.C.G.'s counsel expects to appeal the decision to the Second Circuit — a lengthy process that can last months or even years. Koenig Decl. ¶ 31. Heightened procedural protections are warranted under these circumstances. *See, e.g.*, *Banegas*, 2021 WL 1852000, at *3 (ordering a new bond hearing where petitioner had been detained for nine months); *Quintanilla*, 2021 WL 707062, at *3 (granting relief where petitioner was detained for less than four months); *Lopez Cano v. Decker*, No. 22-cv-07428 (AKH), 2022 WL 17584156, at *3 (S.D.N.Y. Dec. 12, 2022) (granting relief where petitioner had been in detention for approximately seven months); *Arana v. Decker*, No. 20-cv-04104 (LTS), 2020 WL 7342833, at *7 (S.D.N.Y. Dec. 14, 2020) (ordering a new bond hearing when petitioner had been detained for nine months).

---

[4] That *Black v. Decker* dealt with Section 1226(c) and not 1226(a) "means only that the case is not directly binding here, not that its reasoning is irrelevant." *Black*, 103 F.4th at 149.

The Government, pointing to J.C.G.'s requests for extensions, seeks to attribute the length of J.C.G.'s detention to his own actions. Opp. at 18-19. But "[i]n coming to a determination that 'individuals subject to prolonged detention under § 1226(a) must be afforded process in addition to that provided by the ordinary bail hearing,' the Second Circuit [in *Velasco Lopez*] did not state that this holding was conditioned on whether the length of the detention was attributable to the fault of the detainee." *Jimenez*, 2021 WL 826752, at *7 (quoting *Velasco Lopez*, 978 F.3d at 854). Nor does *Black* suggest that whether the detainee sought extensions is relevant to determining whether he or she has been subjected to "prolonged detention." To the contrary, the Second Circuit in *Black* acknowledged that "detained noncitizens may have a much harder time preparing their cases because of difficulties in communicating with counsel and gathering evidence," *Black*, 103 F.4th at 156, making extensions more likely. Moreover, the Government has not presented any evidence of dilatory or bad-faith tactics by Petitioner or Petitioner's counsel. That J.C.G. requested and was granted extensions does not alter this Court's procedural due process analysis.

For these reasons, the Court finds that due process entitles J.C.G. to a new bond hearing at which the Government carries the burden of justifying his continued detention.

## III. Additional Procedural Requirements

J.C.G. additionally seeks an Order directing the IJ to consider alternatives to detention and his ability to pay if a monetary bond is set. Pet. at 33.

"[C]ourts in this District overwhelmingly agree that IJs must consider . . . alternatives to imprisonment and ability to pay . . . when determining bond for a detained immigrant." *O.F.C.*, 2022 WL 4448728, at *10 (collecting cases). Consideration of these factors is necessary to ensure that detention is "reasonably related to the Government's purpose for committing the detainee." *Hernandez-Aviles v. Decker*, No. 20-cv-07636 (ER), 2020 WL

5836519, at *2 (S.D.N.Y. Oct. 1, 2020); *see Hernandez v. Decker*, No. 18-cv-05026 (ALC),

2018 WL 3579108, at *12 (S.D.N.Y. July 25, 2018) ("A bond determination that does not

include consideration of financial circumstances and alternative release conditions is unlikely

to result in a bond amount that is reasonably related to the government's legitimate interests."

(quoting *Hernandez v. Sessions*, 872 F.3d 976, 991 & n.4 (9th Cir. 2017))).

    The Government argues that "if at a future bond hearing, the immigration judge were

to find that J.C.G. still presents a danger to the community, the immigration judge should not

be required to consider ability to pay and alternatives to detention (particularly where such

considerations are relevant to mitigating flight risk, not dangerousness) beyond denying

bond." Opp. at 20. This argument is beside the point. Petitioner "merely requests

consideration of alternatives to detention and his ability to pay as part of the flight risk

inquiry — not with respect to danger." Reply at 11-12. Consideration of those factors with

respect to the flight risk inquiry is indisputably appropriate. "At that point, refusing to

consider ability to pay and alternative means of assuring appearance creates a serious risk that

the noncitizen will erroneously be deprived of the right to liberty purely for financial reasons."

*Black*, 103 F.4th at 158 (citing *Bearden v. Georgia*, 461 U.S. 660, 672-73 (1983)).

    As for the Government's argument that requiring the IJ to consider these factors would

"interfere with the 'broad discretion' afforded to an immigration judge in determining a

noncitizen's eligibility for release on bond," Opp. at 20 (quoting *In re Guerra*, 24 I. & N. Dec.

at 40), the Second Circuit in *Black* already rejected this argument. The Second Circuit

acknowledged the IJ's "broad discretion in setting terms" of bond but found that requiring the

IJ to consider alternatives to detention and the noncitizen's ability to pay "does nothing to

constrain its discretion." *Black*, 103 F.4th at 159. "[T]he IJ is free to give as much or as little

weight to these factors as appropriate," so long as it considers those factors and "the decision

[it renders] is reasonable." *Id.* (quoting *In re Guerra*, 24 I & N. Dec. at 40); se*e also O.F.C.,* 2022 WL 4448728, at *10 ("[R]equiring the IJ to consider certain factors does not displace the IJ's discretion to determine how much those factors should weigh in ultimately setting bond.").

Therefore, the Court holds that, at the new bond hearing at which the Government shall carry the burden of proof, the IJ shall also consider alternatives to detention and ability to pay when determining J.C.G.'s bond.

## CONCLUSION

For the reasons set forth above, the Court issues the writ. The matter is therefore remanded to the immigration court for further proceedings consistent with this Opinion and Order. Specifically, within seven calendar days of this Opinion and Order, the immigration court must either hold a bond hearing at which the Government bears the burden of proving, by clear and convincing evidence, that Petitioner is a danger to the community or a flight risk, or release Petitioner. In determining whether to grant bond, the IJ shall consider the availability of alternative conditions of release, and in determining the amount of any bond imposed, the IJ shall consider the Petitioner's ability to pay.

Dated: January 14, 2025
        New York, New York

                                    SO ORDERED.

                                    *Jennifer Rochon*
                                    _____
                                    JENNIFER L. ROCHON
                                    United States District Judge